### In the Interest of J.B.

### Syed Q. RASHID, M.D., Petitioner and Appellee,

### v.

### J.B., Respondent and Appellant.

### Civ. No. 870193.

Supreme Court of North Dakota.

Aug. 12, 1987.

---

William Kirschner & Associates, Fargo, for respondent and appellant, argued by Ronnie Diane Rosenberg and J.B.

Melody R.J. Jensen, Asst. State's Atty., Fargo, for petitioner and appellee.

LEVINE, Justice.

This is an appeal from an order of involuntary commitment to the State Hospital. We affirm.

J.B. was hospitalized on an emergency basis under § 25–03.1–25, North Dakota Century Code. The trial court appointed attorney Rosenberg to represent J.B. After finding probable cause to believe J.B. was severely mentally ill and in need of treatment, the court ordered J.B. to undergo evaluation and treatment at the State Hospital for no more than fourteen days, as provided in § 25–03.1–17, NDCC.

On June 19, 1987, a treatment hearing was held to consider the petitioner's request that J.B. be committed. At the beginning of the proceeding, J.B. advised the court that he would like to "get another lawyer" because it was his legal right to fire his attorney and because he believed attorney Rosenberg did not wish to represent him; nor did he want her to represent him. J.B. suggested postponement of the hearing. When the trial court attempted to explore the reasons for J.B.'s dissatisfaction with Rosenberg, J.B. became increasingly agitated, culminating in his removal from the courtroom. The court continued its inquiry, directing questions to Rosenberg. Rosenberg informed the court that J.B. did not want her to represent him because he believed that she had "thrown" the preliminary hearing. He also insisted that the present proceedings were a federal action which entitled him to a jury trial and that he had the right to a private lawyer. In response to the court's questions, Rosenberg informed the court that she bore J.B. no animosity and was willing to represent him, but not if he did not want her to. The court concluded there was no basis for substitution of counsel "other than what appears to be Respondent's severe mental disorder." The court also expressed its confidence in Rosenberg and ordered the hearing to continue in J.B.'s absence but with Rosenberg representing him.

At the conclusion of the hearing, the court found J.B. was suffering from mental illness and in need of treatment and ordered J.B. committed to the State Hospital for a period of ninety days. J.B. appealed.

■ The issue on appeal is whether the trial court's denial of the request for substitution of appointed counsel is a violation of J.B.'s right to due process under the fourteenth amendment of the federal Constitution.

J.B. argues that a civil commitment proceeding implicates procedural due process, that procedural due process requires representation by counsel and that in order to be "meaningful" (*i.e.*, constitutional), the representation must be "acceptable" to the client. J.B.'s conclusion does not withstand scrutiny.

It is well settled that involuntary commitment to a mental institution is a significant deprivation of liberty which the state cannot accomplish without due process. *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); *In Interest of Ebertz*, 333 N.W.2d 786 (N.D.1983). It is because involuntary commitment is recognized as "a massive curtailment of liberty," *Vitek v. Jones*, 445 U.S. 480, 491, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), that the constitutional safeguards afforded criminal defendants are generally extended to those involved in civil commitment proceedings. *E.g., Heryford v. Parker*, 396 F.2d 393, 396 (10 Cir.1968); *In re Hop*, 623 P.2d 282, 286, 171 Cal.Rptr. 721, 29 Cal.3d 82 (1981). One such procedural safeguard provided in mental health proceedings is the right to counsel. *E.g., Project Release v. Prevost*, 722 F.2d 960, 969 (2 Cir.1983).

This court has previously expressed the view that individuals subject to North Dakota civil commitment proceedings are entitled to representation by counsel, although it did not decide that issue. *In re Ebertz, supra* at 788. We do so now.

In accord with the fourteenth amendment of the federal Constitution, North Dakota law specifically provides the right to counsel, at state expense if necessary, in any judicial proceeding concerning a patient's commitment. *See* § 25–03.1–13, NDCC.

■ Commitment proceedings generally mirror criminal proceedings.[1] *In re Ebertz, supra* at 788. There is no federal constitutional right to appointed counsel of choice in a criminal proceeding, *e.g., State v. Wulffenstein*, 733 P.2d 120, 121 (Utah 1986). Correspondingly, we conclude there is no federal constitutional right to appointed counsel of choice in a civil commitment proceeding.

Rather, the matter of substitution of appointed counsel is committed to the sound discretion of the trial court and, absent a showing of good cause for the substitution, a refusal to substitute is not an abuse of discretion. *See, e.g., State v. LaGrand*, 152 Ariz. 483, 733 P.2d 1066, 1070 (1987); *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977); *People v. McElrath*, 220 Cal.Rptr. 698, 701, 175 Cal.App.3d 178 (1985); *People v. Sawyer*, 453 N.Y.S.2d 418, 421–22, 438 N.E.2d 1133, 57 N.Y.2d 12 (1982), *cert. denied*, 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983).

A request for newly appointed counsel should be examined with the rights and interest of the respondent in mind, tempered by consideration of judicial economy. *See State v. LaGrand, supra* at 1069. The court should inquire on the record into the reasons for the complaints about counsel. *United States v. Allen*, 789 F.2d 90, 92 (1 Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 164, 93 L.Ed.2d 103 (1986); *People v. McElrath, supra* at 701. The court may rely upon assertions of counsel, *see United States v. Cox*, 580 F.2d 317, 322 (8 Cir. 1978), because an attorney is an officer of the court whose declarations to the court "are virtually made under oath." *State v.*

---

1. We rely on criminal cases to define the right to reappointment of counsel in this mental health proceeding. However, criminal cases may not always dictate the results in mental health proceedings. *In re Ebertz, supra*, lists fundamental differences between the two types of cases, which must be considered.

*Brazile,* 226 La. 254, 75 So.2d 856 at 860–61 (1954).

In *State v. LaGrand, supra* at 1069–70, the Arizona supreme court identified a variety of factors to be considered by a trial court when deciding a motion for substitution of counsel in a criminal proceeding. We believe many of those factors are relevant in the context of a civil commitment proceeding as well. Thus, a trial court should determine: whether an irreconcilable conflict exists between counsel and respondent; whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the proclivity of the respondent to change counsel; the quality of counsel. Consideration of these factors should guide the trial court's exercise of discretion in deciding whether there is good cause for the request to substitute counsel.

 Here, the trial court carefully inquired on the record into the reasons for J.B.'s complaints. It implicitly determined that the conflict between J.B. and his attorney was bound to recur with a new attorney because obviously J.B.'s expectations of federal action and jury trial would not be fulfilled by substitution of new counsel. New counsel would certainly be confronted with the same conflict. The trial court, relying on Rosenberg's explanation of J.B.'s reasons for wishing new counsel, concluded that there was no good reason presented for substituting counsel. The trial court also determined that Rosenberg was competent and stated its confidence and praise for Rosenberg's ability.

We conclude that the trial court did not abuse its discretion in denying the request to substitute counsel.

J.B. also asserts that even if the denial of his request for substitution of counsel is not a violation of his federal due process rights, it is a violation of his statutory rights. J.B. argues that § 25–03.1–13, which provides for counsel in commitment proceedings, and which is silent on the right of respondents to select lawyers of their choice, should be read to provide a respondent in a mental health proceeding with the ability to discharge one attorney

and "retain" another. When the legislature wished to afford a respondent the right to select an individual who is to be appointed by the court, the legislature expressly granted that right. *See* § 25–03.1–09(2) (respondent may select an independent expert examiner to be appointed by the court). There is no corresponding expression in § 25–03.1–13, NDCC. We hold that a respondent has no statutory right to select a particular court-appointed attorney under § 25–03.1–13, NDCC, or to substitute new counsel, and such selection and substitution are matters within the trial court's discretion.

The order is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.